United States District Court
Southern District of Texas
**ENTERED**
October 29, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-83 |
| | § | |
| SERVANDO GARCIA, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER ON SUMMARY JUDGMENT MOTIONS**

Plaintiff Liberty Mutual Insurance Company (Liberty Mutual) filed this action for declaratory judgment seeking a determination that it does not owe a duty of indemnity to Defendant Servando Garcia (Garcia) under a business automobile policy issued to Basic Energy Services, L.P. (Basic Energy), Garcia's employer. Likewise, it disclaims liability to pay Garcia's debt to his judgment creditors Felix Luera, Jr., and Bianca Luera, Individually and as Next Friend of Carabella Luera (the Lueras) based on injuries sustained in an automobile collision allegedly covered by the Liberty Mutual policy. Before the Court are cross-motions for summary judgment filed by Liberty Mutual (D.E. 14) and the Lueras (D.E. 15) on the question whether the policy affords coverage to Garcia. In its response to the Luera's summary judgment motion, Liberty Mutual objects to the Luera's Exhibit K, submitted as summary judgment evidence. The Court sustains Liberty Mutual's objection to the Luera's Exhibit K (D.E. 15-12) and that exhibit is disregarded. For the reasons set out below, the Court GRANTS Liberty Mutual's motion (D.E. 14) and DENIES the Lueras's motion (D.E. 15).

## BACKGROUND

Basic Energy employed Garcia for ten years as a field mechanic and supplied him with a truck that was within his exclusive possession and control around the clock, all year long. Garcia was on call for Basic Energy 24 hours a day, 7 days a week, 365 days a year and had a number of different worksites that he might be called to. For liability coverage on the vehicle, Basic Energy secured Business Auto Policy Number ASI-641-005029-032 from Liberty Mutual in the primary amount of $1,000,000, with "insured" defined as the named insured (Basic Energy) and "Anyone else while using with your permission a covered "auto" you own, hire or borrow."[1] D.E. 14-1, p. 125. "You" is defined as the named insured, Basic Energy. D.E. 14, p. 8. Such permissive users are referred to as "omnibus insureds."

On September 2, 2012, Garcia operated the vehicle while on his own personal business and while intoxicated. On that evening, according to the police report, the investigating officer determined from sobriety tests that Garcia was intoxicated. His Intoxilyzer results showed an alcohol concentration of 0.156—a level significantly over the legal limit of 0.08. D.E. 18-1; Tex. Penal Code §§ 49.01(2)(B), 49.04. In his impaired condition, he caused a collision with the Lueras and was ultimately convicted of driving while intoxicated. When the Lueras sued Garcia and Basic Energy in state court for injuries sustained in the collision, Liberty Mutual defended both parties as insureds under the policy's duty to defend, without any initial reservation of rights as to Garcia.

---

[1] The definition contains some exceptions, none of which apply.

The underlying lawsuit was filed on June 26, 2013. D.E. 14-2. Garcia testified at a deposition on May 3, 2014, to the extent of his drinking of alcoholic beverages on the night of the collision and that Basic Energy had policies he was aware of that prohibited personal use of the vehicle and driving after drinking. D.E. 14-5. Based upon Garcia's deposition testimony that he was aware of Basic Energy's policies regarding permitted usage of the vehicle and admissions that he had knowingly violated those policies at the time of the collision, on November 20, 2014, Basic Energy obtained a summary judgment that it was not liable under principles of respondeat superior (no course and scope of employment) or negligent entrustment, which judgment is currently on appeal. D.E. 14-7.

On November 24, 2014, Liberty Mutual sent to Garcia, by way of the attorney the company had hired to defend him, a reservation of rights letter indicating that it was "continuing" to reserve its rights based upon questions whether he had permission to use the vehicle in the manner in which he was using it on the date of the incident and whether the insurance covered any punitive or exemplary damages that might be awarded. D.E. 15-13. At trial on April 7 and 8, 2015, after this declaratory judgment action was filed, Garcia's testimony was repeated for the jury. D.E. 14-3, 14-4. The Lueras obtained a jury verdict and judgment against Garcia for a sum exceeding $500,000 but within the $1 million primary policy amount. The Lueras now seek to collect their judgment against Liberty Mutual under its obligation of indemnity to Garcia.

It is undisputed that the Ford F-250 truck was a "covered auto" under Basic Energy's policy. It is also undisputed that Basic Energy had provided Garcia with the

truck for his exclusive use. In this sense, Garcia clearly had permission to use the truck as Basic Energy did not seek its return or report it stolen. Nonetheless, Liberty Mutual argues that, while Garcia was an "insured" when using the truck in a manner consistent with his work for Basic Energy, he is not entitled to indemnity because he was not an "insured" at the time of the collision due to his violation of Basic Energy's policies regarding the operation of its vehicles. Liberty Mutual relies upon the summary judgment and Garcia's testimony in favor of Basic Energy in the underlying case in contending that Garcia was not using the vehicle with Basic Energy's permission as a matter of law.

The Lueras argue that Liberty Mutual's conduct in defending Garcia—supplying an attorney with a conflict of interest—operates as a waiver of its right to contest coverage. On the merits of the coverage issue, they note that the prior summary judgment in favor of Basic Energy is not yet final as an appeal is pending. They also contend that there are disputed issues of material fact regarding whether Basic Energy had any policies regarding usage, whether any policies were actually enforced, and whether Garcia knew of the policies and was using the vehicle in a manner contrary to the permission granted to him. The Lueras further argue that the issue of coverage cannot turn on the particular usage of the vehicle because the vehicle could go from insured to uninsured in a single trip, depending upon whether a particular destination or driving condition was consistent with Basic Energy's policies.

## DISCUSSION

### A. Waiver of Defense Against Coverage

It was clear from the time the police report was issued that Garcia had failed his field sobriety tests—by a large margin. That was enough of a basis for Liberty Mutual to begin formulating a defense to coverage by arguing that Garcia was operating the truck in a manner not permitted by Basic Energy and, thus, he was not an omnibus insured under the policy and no indemnity would be forthcoming. Despite knowing this, Liberty Mutual treated Garcia as if he were entitled to coverage and supplied an attorney to defend him without a reservation of rights. The Lueras argue that Garcia's attorney had a conflict of interest because he actually worked on behalf of Liberty Mutual to exploit Garcia's cooperation until—with the benefit of Garcia's cooperative testimony—Basic Energy succeeded in obtaining a summary judgment.

The Lueras claim that Liberty Mutual has waived its defense against coverage by failing to timely reserve its rights in that regard and by failing to disclose the conflict of interest. Liberty Mutual challenges the Lueras's standing to complain of Garcia's rights under the policy of insurance and further claims that waiver and estoppel cannot create coverage where there is none to begin with. Assuming for purposes of argument that the Lueras have standing to enforce Garcia's contractual right to coverage under the Liberty Mutual policy, the Court considers the merits of the waiver and estoppel arguments.

Whether Liberty Mutual has waived its non-coverage defense or is estopped by its conduct from raising it is a question governed by Texas law and requires an understanding of two competing cases: *Employers Casualty Co. v. Tilley*, 496 S.W.2d

552 (Tex. 1973) and *Ulico Casualty Co. v. Allen*, 262 S.W.3d 773 (Tex. 2008). In both cases, the insurance carrier, pursuant to the duty to defend, supplied the purported insured with defense counsel who ultimately worked to document a defense to coverage on behalf of the carrier and against his or her client. Both involved a conflict of interest and a failure to disclose it. In *Tilley*, the carrier was estopped from denying coverage. In *Ulico*, the carrier was free to deny coverage.

The difference between the cases is that in *Tilley*, the personal injury claim in the underlying case was clearly within the terms of the policy. It was a covered risk. The non-coverage defense was based on an alleged forfeiture—Tilley's failure to submit the covered claim to the carrier in a timely manner. When an insured's forfeiture of coverage is at issue, the Texas Supreme Court has held that the carrier is not permitted to benefit from an exploitation of the insured. In sum, a carrier is not permitted to take advantage of an insured to defeat coverage.

The *Ulico* case was the flip side of *Tilley*. In *Ulico*, the policy was a claims-made policy that had expired prior to the claim being submitted to the carrier—a condition precedent. The opinion made it clear that doctrines of estoppel and waiver cannot be used to re-write a policy to expand coverage to a risk not otherwise included. 262 S.W.3d at 775. In sum, the purported insured cannot create coverage on the basis of a carrier's wrongful acts. The *Ulico* opinion specifically limited *Tilley* to its facts and effectively rejects the Luera's argument that a conflict of interest in a carrier's dual actions of (1) defending the insured while (2) working to defeat coverage waives the non-coverage argument. *Id*. at 781-82 (rejecting such language in *Farmers Texas County*

*Mutual Insurance Co. v. Wilkinson*, 601 S.W.2d (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.)).

The Lueras also rely on *Pennsylvania National Mutual Casualty Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478 (5th Cir. 1992) (per curiam). That Fifth Circuit opinion applied Texas law and rested its decision on the *Wilkinson* exception. Because that exception has since been eliminated by *Ulico*, the *Kitty Hawk* opinion can no longer be followed with respect to the proposition that a carrier waives any non-coverage defense (not just a defense based upon the insured's forfeiture) by defending without a reservation of rights. Whether there is a waiver depends upon whether there was coverage at the outset.

Liberty Mutual is arguing that the Luera's claim against Garcia is not covered because Garcia was not an omnibus insured at the time of the collision because he operated the vehicle outside the confines of the permission granted to him. This is a coverage issue, not a forfeiture issue, as set out more fully below. For that reason, this case falls under the rule of *Ulico*, not *Tilley*, and Liberty Mutual's conduct in supplying a defense attorney who according to the Lueras worked against Garcia to absolve Basic Energy and Liberty Mutual does not constitute a waiver or raise an estoppel issue against its non-coverage defense. The Court rejects the Luera's summary judgment argument that Liberty Mutual waived its non-coverage defense or is estopped from asserting it.

**B. Garcia as Omnibus Insured**

This Court is presented with the question whether Liberty Mutual owes a duty to indemnify Garcia and pay the judgment obtained by the Lueras because Garcia is an

"insured" under the Basic Energy policy. The scope of review is governed by the fact that it is the duty to indemnify (not the duty to defend) that is at issue.

> The duty to defend and the duty to indemnify "enjoy a degree of independence from each other." The duty to defend arises before litigation is completed, thus the determination as to duty to defend is according to the eight-corners rule wherein only the pleadings and the policy language are considered. On the other hand, the insurer's duty to indemnify is determined based on the facts actually established in the underlying suit.

*Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 334 S.W.3d 217, 219 (Tex. 2011) (citations omitted). Thus the Court may consider the policy language and any facts found in the underlying suit. If the operative facts were not submitted in the underlying case, then any dispute regarding those facts is subject to trial in this declaratory judgment action.

**Policy Language**. As noted above, whether Garcia was an omnibus insured under the policy requires a determination that he was using the truck with Basic Energy's permission. D.E. 14-1, p. 125. "Permission" is not a defined term in the policy. However, its meaning—the intent of the parties—may be clarified by examining it in context with the remainder of the policy.

While neither party discussed it in their briefing, "permission" appears not only in the general definition of "insured," but also in the Employee Hired Autos Endorsement: "An 'employee' of yours is an 'insured' while operating an 'auto' hired or rented under a contract or agreement in that 'employee's' name, ***with your permission, while performing duties related to the conduct of your business***." D.E. 14-1, p. 121 (emphasis

added). The clause "while performing duties related to the conduct of your business" does not appear in the definition of an omnibus insured in the context of vehicles owned or secured by Basic Energy. The absence of this language in the general policy definition of "insured" indicates that "permission" is not coextensive with the course-and-scope of employment.

**Underlying Action**. Thus the question of Garcia's status as an omnibus insured under the Basic Energy policy was not determined by the summary judgment rendered in favor of Basic Energy on the issue of respondeat superior (course and scope) in the underlying case. And because negligent entrustment involves the issue that the owner of the vehicle knew or should have known the driver was unlicensed, incompetent, or reckless[2]—a factor that must be shown in addition to permission—a summary judgment on that theory of liability is not determinative of whether Basic Energy gave Garcia permission to use the truck. Basic Energy's summary judgment has no preclusive effect on Garcia's status as an omnibus insured because it did not address the same relevant facts, whether or not any appeal remains pending.

Likewise, the jury verdict and judgment against Garcia in the underlying case did not involve a finding determinative of whether he used the Basic Energy truck with permission. Verdict, D.E. 14-8. The only liability questions asked were whether Garcia's negligence, if any, proximately caused the occurrence and whether Garcia was grossly negligent. Id., pp. 5, 9. The jury was not asked about Basic Energy's permission or policies with respect to use of the vehicle, whether those policies were enforced, or

---

2 *See generally*, *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (per curiam).

whether Garcia was aware of them and violated them at the time of the incident. Thus the underlying case fails to supply any fact findings to inform, much less determine, whether Garcia is entitled to coverage under the policy.

**"Permissive Use" Test**. The Lueras argue that the test of permissive use for purposes of determining whether a driver is an omnibus insured must be an all-or-nothing decision based on whether the driver is in lawful possession of the vehicle. Such a test is consistent with the auto policy's language. It is also an attractive conclusion from a public policy standpoint in which all drivers on the road are required to have liability insurance. A gap in coverage created by a personal errand or a violation of policies unknown to motorists on the roadways works contrary to innocent victims of automobile accidents. However, that is what the law in Texas allows; and this Court is not at liberty to impose a change in that law.

The issue is how to treat a deviation from a business's policy in determining whether the vehicle was used with the business's permission. The Supreme Court of Texas wrote at length about the different approaches to this question in *Coronado v. Employers Nat. Ins. Co.*, 596 S.W.2d 502 (Tex. 1979):

> There are three different approaches to the problem of deviation in the United States. They are usually referred to as: (1) the "strict" or "conversion" rule, (2) the "liberal" rule, and (3) the "minor deviation" rule. Under the "strict" rule, the actual use at the time of the accident must be within the time limits and geographical area specified or contemplated by the parties, otherwise permission cannot be found to exist. Under the "liberal" rule, coverage is extended so long as the vehicle was originally entrusted by the named insured to the person operating it at the time of the accident. The only essential thing is that permission be given for use of the

> vehicle in the first instance and coverage remains afforded irrespective of how gross the deviation from the original bailment. The third position is somewhat between these two extremes and the courts applying this rule modify the strict rule to the extent that protection will be afforded if the use is not a material or gross violation of the terms of the initial permission. Under this rule, the court must determine in each instance taking into account the extent of deviation in actual distance or time, the purposes for which the vehicle was given, and other factors whether the deviation was "minor" or "material."
>
> . . .
>
> We believe the better rule to be the intermediate rule, known as the "minor deviation" rule, which takes a position between the other two more extreme rules. It avoids the possible injustice of the strict rule and yet reasonably gives effect to the terms of the policy. It is flexible in that it looks to the factual situation of each case. . . . Under this rule the relationship of the parties and the scope of the initial permission is very important.

*Id*. at 504-05. Because the Supreme Court has rejected the liberal approach that the Luera's advocate, this Court rejects their argument and instead determines whether the facts show that Garcia materially deviated from the permission Basic Energy granted to him.

This is not necessarily an easy matter of looking at Garcia's level of intoxication or the personal nature of his trip. The question is whether Basic Energy actually limited the permission granted with possession of the truck. As the Texas Supreme Court wrote in *Coronado*, "Obviously, the same construction could not be applied to the permission given to a regular employee to whom a company vehicle is regularly assigned as to a one-

time user of the vehicle." *Id*. at 505. Garcia was clearly a long-term, full-time user of this truck, which affects how the facts are evaluated.

**Relevant Facts**. While no definitive findings were made in the underlying action, evidence was adduced on various issues regarding Basic Energy's policies regarding permitted uses of its vehicle, Garcia's knowledge of those policies, his compliance with those policies at the time of the collision, and Basic Energy's enforcement or failure to enforce those policies. That testimony is submitted as summary judgment evidence here.

Both express and implied permission should be considered in determining whether permissive use exists.

> Under the standard omnibus clause of an automobile liability policy, an operator is entitled to protection as an additional insured if his use of the vehicle is with either the express or the implied permission of the named insured. While express permission must be affirmatively stated, implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used.

*Royal Indem. Co. v. H. E. Abbott & Sons, Inc*., 399 S.W.2d 343, 345 (Tex. 1966). The Fifth Circuit has identified a number of factors that go into the determination of whether an employer has granted an employee permission to use a vehicle:

- The driver's understanding based on his own prior usage;
- The type of usage of other drivers allowed by the company without objection;
- The employer's failure to articulate limitations on use in the face of knowledge of employees' personal use;

- Express policies or rules issued by the company;
- Employees' knowledge of company policies or rules and any pledge extracted from employees in exchange for use of the vehicle;
- Whether the employee ever asked for permission for personal use and the response to that request;
- The employer's knowledge of likely use of the vehicles and failure to protest it;
- The employer's failure to question employees about their usage of the vehicles; and
- The employer's participation in non-business events with knowledge that the employee's transportation to the event was by way of the company vehicle.

*Liberty Mutual Ins. Co. v. Graham*, 473 F.3d 596, 603-04 (5th Cir. 2006).

After reviewing the summary judgment evidence, the Court finds that Garcia and his wife admitted in numerous ways that Garcia knew that he was not permitted to use the truck for personal purposes, he knew about Basic Energy policies against unsafe driving (including drinking and driving), he went to safety meetings where the policies were explained, and he knew he was in violation at the time of the collision. There is no evidence to overcome these admissions with respect to whether Basic Energy truly enforced their policies or even had prior knowledge of violations that it failed to correct. Any suggestion in that regard is purely speculative on this record.

**CONCLUSION**

For the reasons set out above, the Court finds that there is no disputed issue of material fact to make Garcia an omnibus insured, given his admitted use of the truck contrary to Basic Energy's limitations imposed upon his access to the truck. The Court

GRANTS Liberty Mutual's summary judgment motion (D.E. 14), DENIES the Luera's summary judgment motion (D.E. 15), and GRANTS Liberty Mutual a declaratory judgment that Garcia is not an omnibus insured under the business automobile policy at issue, Liberty Mutual does not owe Garcia a duty of indemnity, and the Lueras have no claim to the policy proceeds.

ORDERED this 29th day of October, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE